UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carol Maher, individually and on
behalf of a class of similarly
situated individuals,

        Plaintiff,

v.

Sempris, LLC, Health Pure
Products, LLC, John Doe,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-2202 ADM/JJK

Alicia E. Hwang, Esq., Edelson P.C., Chicago, IL; and, Craig S. Davis, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN, on behalf of Plaintiff.

David Jimenez-Ekman, Esq., Jenner & Block, Chicago, IL; and, Elsa M. Bullard, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendant Sempris, LLC.

## I. INTRODUCTION

On June 25, 2014, the undersigned United States District Judge heard oral argument on Defendant Sempris, LLC's ("Sempris") Motion to Dismiss [Docket No. 56].[1] Plaintiff Carol Maher ("Maher") opposes the motion. For the reasons set forth below, the motion is denied.

## II. BACKGROUND[2]

Maher, a resident of Georgia, responded to an infomercial for a dietary supplement sold by Health Pure Products, LLC ("Health Resource"). See Compl. [Docket No. 1]. In December

---

[1] During consideration of this motion, the Court received notice of Plaintiff's voluntary dismissal of Defendant Health Pure Products, LLC [Docket No. 80]. Therefore, Count 6 of the Amended Complaint, brought only against Health Pure Products, LLC, is dismissed without further discussion.

[2] In considering the Motions to Dismiss, the Court takes the facts alleged in the Complaint to be true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994)

2012, Maher called the phone number displayed in Health Resource's infomercial and was connected to a live customer service representative who took Maher's order. The customer service representative was employed by Defendant John Doe, the call-center company who answered and responded to Health Resource's telephone orders. Toward the end of the conversation for the dietary supplement, the customer service representative asked Maher if she would also be interested in trying a membership program called "Taste for Savings" for an introductory fee of $1.95. Id. ¶ 38. Maher alleges the customer representative provided no clear explanation of the benefits of the program, other than that the program would provide Maher with undefined savings. Id. ¶ 39. The customer representative assured Maher, however, that she would receive information in the mail to explain all the benefits and costs of the program, as well as various gift cards and rebates for agreeing to the trial membership. Id. The representative further claimed that Maher would be able to call and cancel her membership at any time. When Maher asked the customer representative if enrollment in the program would result in recurring fees, the representative deflected the question and responded that the program information would be sent in the mail and Maher would be able to review the materials before being charged. Id. ¶ 40. Maher further alleges that she was never informed that the Taste for Savings program was not a program of Health Resources. Maher agreed to pay the introductory fee.

Taste for Savings is a membership program sold by Sempris, a Minnesota company. Id. ¶ 41. In January 2013, Sempris charged Maher $24.95 for the membership program. Maher was charged the same amount each month for five months until May 2013 when she discovered the charges and called the phone number appearing on her credit card statement. Maher informed the customer service representative that she did not agree to monthly charges, asked

2

that the charges be refunded immediately, and attempted to cancel her membership. A few days later Maher alleges she noticed another monthly membership fee pending on her account and canceled her credit card to avoid being charged any future fees. Id. ¶ 46. Maher never received the written materials that the representative told her would describe the program in more detail, and she never received any gifts or vouchers. Id. ¶ 47. Maher claims that Sempris has deceptively enrolled thousands of subscribers and that her experience is the same as similarly situated Sempris customers.

Sempris works with third-party call-centers to sell its products. The third-party call-centers contract with Sempris to sell the memberships. But, Maher claims, Sempris does not send membership materials to the enrollees. Instead, Sempris charges these customers monthly fees until the customers realize that they are being charged for nothing. Upon information and belief, Maher alleges that similar to her experience, Sempris continues to charge customers after they have tried to cancel their membership.

### III. DISCUSSION

**A. Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure provides a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. And, although the court may not consider matters outside the pleading at this stage, "documents necessarily embraced by the complaint are not matters outside the pleading." Ashanti v. City of

Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted).

Under Rule 8(a), pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must allege "enough facts to state a claim to relief that is plausible on its face," raising "a right to relief above the speculative level" and pushing claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**B. Fraud**

Claims of fraud must be alleged with particularity. Fed. R. Civ. P. 9(b); see, e.g., Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010). This heightened particularity standard requires pleadings to allege the "who, what, where, when, and how" of fraud. United States ex. rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted). This heightened particularity requirement "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003).

Maher alleges Sempris has violated the Minnesota Prevention of Consumer Fraud Act (MPCFA), Minn. Stat. § 325F.68, et seq. (Count 1) and the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA), Minn. Stat. § 325D.43, et seq. (Count 2). In addition, Maher alleges common law fraud by omission (Count 4) and fraudulent inducement (Count 5). Sempris argues Maher has failed to plead her fraud related claims with particularity. Sempris argues that Maher has unfairly combined the defendants and characterizes the complaint as a "kitchen-sink" or "shotgun" complaint, citing Trooien v. Mansour, 608 F.3d 1020, 1030 (8th Cir. 2010). In

addition, Sempris faults Maher for not identifying the customer service call-center by name, citing for support E-Shops Corp. v. U.S. Bank Nat'l Assoc., 678 F. 3d 659 (8th Cir. 2012). At oral argument, Sempris described its interaction with third-party marketers like John Doe, stating, "Sempris designs a program, provides the program, services the program, but never does any marketing." Hr'g Tr. [Docket No. 79] 17.

Maher counters that Sempris is a marketing company that develops and operates the membership programs, and works in tandem with the John Doe call-center company to use deceptive marketing and sales tactics to enroll customers in Sempris' membership programs for mutual profit. Compl. ¶¶ 13, 29. Specifically, Maher alleges that she called the John Doe call-center company for an infomercial product, but John Doe initiated the sale of Sempris' product. Maher was then enrolled in Sempris' membership program and was charged for that membership. Maher's billing information was provided to Sempris by John Doe and Sempris charged her for five months of membership. Essentially, Maher alleges Sempris undertook the responsibility of fulfilling the representations John Doe made to Sempris customers, thus it is plausible that Sempris took an active role and interest in the representations made by the John Doe entity.

Maher has sufficiently pled the fraud related counts with particularity. During oral argument, Maher admitted that discovery is necessary to reveal the terms of Sempris' contract with the John Doe call-center and the extent to which Sempris was involved in dictating the script used by customer service representatives to sell the membership programs to potential customers, Hr'g Tr. 20-21. Unlike the defendant in E-Shops, Sempris' connection to the un-identified defendant is clearly alleged. In E-Shops plaintiffs failed to identify how the defendant knowingly and substantially assisted the underlying fraud. 678 F. 3d at 663. Here, Sempris' role

in the alleged fraud is more clear, especially since it is Sempris' product at issue. Trooien is also distinguishable. Maher has not filed a "shotgun" complaint or attributed false statements to "defendants generally." 608 F.3d at 1030. Maher specifically alleges the customer service representative made fraudulent misrepresentations and omissions in furtherance of a scheme developed by Sempris to sell its membership product. Although the pleadings are somewhat skeletal, they sufficiently put Sempris on notice as to the time, place, and substance of the alleged fraud. Significantly, defendants here are not "left to guess who was responsible for the alleged fraud." Id. (citing Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997)); see also Daniell v. Sempris, LLC, No. 13-6938, 2014 U.S. Dist. LEXIS 72571, *7-10 (N.D. Ill. May 27, 2014).

Maher's failure to plead the name of the John Doe call-center Defendant is not fatal to her claims. The identity of the John Doe Defendant is likely not a mystery to Sempris. It is the call-center that procured and provided Maher's billing information to Sempris. The name of the John Doe call-center does not alter the plausibility of the claim against Sempris.

**C.   Counts 1, 2, and 5: MPCFA, MUDTPA, and Common Law Fraud**

Sempris also argues that because John Doe's customer service representative is not a Sempris employee and is the only defendant who is alleged to have made fraudulent statements, Maher's fraud claims should be dismissed. Sempris cites cases of motions to dismiss being granted because plaintiffs failed to allege the statements or the specific defendants who made the statements. See, e.g., Lahti v. Countrywide Bank, FSB, 2012 U.S. Dist. LEXIS 145787 (D. Minn. Oct. 10, 2012). In this case, Maher alleges John Doe's customer service representative made fraudulent statements. No pertinent case law has been cited by Defendants, and the Court has not located any, that excludes fraud claims against a third-party like Sempris, which has

6

allegedly developed and helped implement a scheme in which its partner uttered the specific fraudulent statements at issue.  At the motion to dismiss stage, it is premature to dismiss Sempris for not being alleged to have made fraudulent statements when Sempris is alleged to have created the fraudulent scheme to sell its products through another who did allegedly make false statements to the benefit of Sempris.

D.  **Count 3: MCPSSA**

In Count 3, Maher alleges Sempris violated the Minnesota Consumer Protection; Solicitation of Sales Act, Minn. Stat. § 325G.  The MCPSSA requires a seller to make certain disclosures "[b]efore any personal solicitation."  Minn. Stat. § 325G.13.  Specifically excluded from the definition of "personal solicitation" is "an attempted sale in which the buyer has initiated the contact with the seller."  Minn. Stat. § 325G.12 subd. 2(b).  Sempris argues that by calling the infomercial phone number, Maher contacted the seller.  Maher argues that she only initiated contact with the dietary supplement seller and did not intend to be solicited for other products such as the Sempris membership program.

Sempris offers no case law to support its argument.  Maher has alleged that the customer service representative initiated the contact for sale of the Sempris product; therefore, Maher has arguably stated a claim under the MCPSSA.  The MCPSSA is a consumer protection statute, likely intended to include situations where a seller developed a scheme to sell its products after a potential customer responds to a third-party's infomercial.

E.  **Count 2: MUDTPA**

Sempris argues Maher's Minnesota Uniform Deceptive Trade Practices Act claim also fails because Maher does not allege any commercial speech made by Sempris.  MUDTPA defines deceptive trade practice as any act that "causes likelihood of confusion or of

misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Minn. Stat. § 325D.44.  Maher alleges Sempris and its customer service representative failed to identify that the membership program in which Maher was being enrolled was a Sempris product.  Furthermore, Sempris allowed customers to confuse its membership program with the infomercial diet product to which the customer had originally responded.  As with the MCPSSA claim above, Maher has stated a claim under MUDTPA.

Sempris also contends that Maher and the putative class she hopes to certify do not have a claim under MUDTPA because the only remedy for a MUDTPA claim is injunctive relief. Sempris argues Maher has not alleged the possibility of future damages.  Maher alleges that she "and the Class have suffered and will continue to suffer actual damages in the form of monies taken by Sempris." Compl. ¶ 73.  At this stage of the proceedings, and considering the plausibility of her other claims, the Court will not dismiss the MUDTPA claim on the basis of remedy.  "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Minn. Stat. § 325D.45, subd. 1.  Maher claims that Sempris continues to sell its product through deceptive trade practices and the Court will not foreclose an equitable remedy that may prove to be appropriate.

**F.   Count 4: Duty to Disclose in Fraudulent Omission Cases**

Sempris argues it had no duty to disclose to Maher facts about its product because there was no fiduciary relationship between them.  A claim for misrepresentation by omission requires a party show that:  a defendant omitted a past or present material fact unknown to the plaintiffs that the defendant was under a duty to disclose; the defendant intended for the plaintiff to rely on the omission; the plaintiff did rely on the omission; and the plaintiff suffered damages as a

result. Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986). As a general rule, parties to a transaction have no duty to disclose material facts to each other, except under special circumstances. Richfield Bank & Trust Co. v. Sjogren, 309 Minn. 362 (Minn. 1976). There are three exceptions to this general rule: "(1) when a confidential or fiduciary relationship exists; (2) when disclosure is necessary to clarify misleading information already disclosed; or (3) when one party has 'special knowledge' of material facts to which the other party does not have access." Taylor Inv. Corp. v. Weil, 169 F. Supp. 2d 1046, 1064 (D. Minn. 2001) (citations omitted). For the third exception, "if a party conceals a fact material to the transaction, and peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated." Sjogren, 309 Minn. at 365.

Maher has pled sufficient facts that Sempris may fall into either the "clarifying misleading information" exception, or the "special knowledge" of material facts exception. See Khoday v. Symantec Corp., 858 F. Supp. 2d 1004, 1018 (D. Minn. 2012). Maher alleges Sempris knew, by its role in creating and benefiting from the scheme, that the customer service representative was misleading consumers. Maher also alleges Sempris intentionally delays or never sends membership information so that it can charge customers without providing the product. Furthermore, Maher claims she, as the target of this sale, did not know upon enrolling that the membership product was being sold by Sempris and that Sempris had no intention of sending her further information to clarify the privileges of membership. If Sempris did not know how the customer service representatives were selling its product or intended to send membership materials but the materials were somehow lost, then it may not be liable for the omissions. However, at the motion to dismiss stage, Sempris has not shown that it is entitled to

dismissal. The Court will not dismiss Maher's fraud by omission claim.

## G. Counts 1-3: Minnesota Law and Choice of Law

Sempris contends Minnesota choice-of-law rules bar the application of Minnesota law to the facts alleged. Sempris argues consumer protection laws of the fifty states "vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." In re St. Jude Med., Inc., 425 F.3d 1116, 1120 (8th Cir. 2005). Sempris assumes that because Maher is a Georgia resident, Georgia law is the potentially conflicting law. Assuming this, Sempris argues that the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. ("GFBPA") prohibits consumer class action suits. Since Minnesota law permits class action, Sempris concludes Georgia and Minnesota law must conflict.

Having concluded that the state laws conflict, Sempris argues Minnesota law cannot be constitutionally applied, but even if it could be constitutionally applied, Minnesota's choice-of-law factors favor application of Georgia law.

These arguments are premature. First, at this stage of the litigation, Maher's status as a Georgia resident when compared to the alleged culpable conduct and the residences of Sempris and John Doe defendant, may not implicate application of Georgia law.

It is also unclear whether Georgia and Minnesota law conflict in any meaningful way. The conflict Sempris identifies is the prohibition in Georgia law of a consumer class action. In its opening brief in support of dismissal, Mem. Supp. [Docket No. 57] 11, Sempris did not address whether class certification is a procedural or a substantive legal difference. Maher raised the procedural-substantive question briefly, citing one case, and concluded that questions of class certification are procedural, not substantive. Resp. [Docket No. 63] 22 (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 409 (2010)). In reply,

Sempris provided a more nuanced analysis of Shady, but without argument and without analysis of the GFBPA statute, Sempris concludes that allowing a class action in Minnesota federal court would impermissibly enlarge the statute's state-created rights and remedies. Reply [Docket No. 69] 12-14. Maher has not had an opportunity to respond. Analysis of the GFBPA statute is necessary to make the determination of whether class certification is "so intertwined" with the statute's substantive rights and remedies that applying Federal Rules of Civil Procedure 23 in its stead would "abridge, enlarge, or modify" a substantive right in violation of the Rules enabling Act. See Davenport v. Charter Commc'ns, LLC, 2014 U.S. Dist. LEXIS 106343 (E.D. Mo. Aug. 4, 2014). Ruling on this question is therefore premature. Further, whether or not Maher's putative class will be approved remains to be determined.

Maher, as an individual, has standing to sue in Minnesota. Maher claims that Sempris' culpable conduct was in Minnesota. The full extent of Sempris' relationship with the John Doe call-center is unknown. The mechanics behind how the John Doe call-center provides Sempris with customer enrollment information and the degree of control Sempris exerts over how John Doe conducts Sempris product sales is also unknown to Maher without discovery. Maher claims that discovery of these relationships will show the significant contacts with Minnesota to justify application of Minnesota law. Many of these issues will be resolved with preliminary discovery and through the class certification process. See Mooney v. Allianz Life Ins. Co., 244 F.R.D. 531 (D. Minn. 2007). Therefore, Maher's Minnesota statutory claims are not dismissed at this time.

### H. Counts 1 and 2: "Public Benefit"

Sempris further argues it is not liable under MUDTPA and MPCFA because the "Private AG Statute" "applies only to those claimants who demonstrate their cause of action benefits the public." Mem. Supp. 14 (citing Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn 2005)). "The

public benefit requirement is typically not met where the alleged conduct occurs in an individualized setting because successful prosecution of such conduct would not advance the state's interests." Tatone v. Suntrust Mortg., Inc., 857 F. Supp. 2d 821, 836 (D. Minn. 2012).

At oral argument, Maher clarified that the scheme alleged involves Sempris controlling or directing the sales of its products through the John Doe call-center.  Taking these facts in the light most favorable to the plaintiff, Maher is alleging that her treatment was, and is, how Sempris accesses its customers.  In addition, Maher has requested an injunction as a form of relief and purports to represent a class of plaintiffs.  Unlike in Tatone, this is not reflective of a "single one-on-one incident that does not convey a benefit." Id.  As with the Court's analysis of injunctive relief, the calculus may change after discovery, but the Court will not preemptively dismiss plausible claims on a motion to dismiss.

**I. Count 7: Breach of Contract**

Sempris argues that Maher's contract claim should be dismissed because Maher claims she did not enter into a valid contract.  Indeed, Maher alleges Sempris and the John Doe call-center failed to inform her of the terms of the membership program in which she was enrolled.  If proven, this fraud would negate any potential contract claims.  But Maher anticipates Sempris arguing that a valid and enforceable contract was made, which would preclude her fraud claims.  See Daniell, 2014 U.S. Dist. LEXIS 72571, at *10-12.  If a contract is found, Maher argues that notwithstanding the contract, Sempris breached the contract by not providing the materials for Maher to review before charging her a recurring fee.  Under Rule 8 of the Federal Rules of Civil Procedure, a party is permitted to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2).  Like the plaintiff in Daniell, Maher does not plead two separate sets of facts; she

alleges that she did assent to what the call-center represented , but argues that her agreement was not a valid assent because it was procured through fraud.  Maher's alternative legal theories, fraud and contract, are both based on the same set of facts and are not improperly pled.

### J. Count 8: Unjust Enrichment

Sempris' argument for dismissing Maher's unjust enrichment claim is based on the arguments made to dismiss Counts 1-7.  Finding none of Sempris' previous arguments on the other claims persuasive, Maher's unjust enrichment claim will likewise remain.

### IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that: Defendant Sempris' Motion to Dismiss [Docket No. 56] is **DENIED.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 24, 2014.